UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re

| | |
|---|---|
| Jason R. Ellingson, | Chapter 7 |
| Debtor. | Bankr. No. 25-30050 |

### UNITED STATES TRUSTEE'S BRIEF IN SUPPORT OF DISMISSAL

The United States Trustee for Region 12 (UST) submits this brief in support of her motion to dismiss this case under 11 U.S.C. § 707(b)(1) based on the totality of circumstances under Section 707(b)(3)(B).

### Facts

The Debtor filed for bankruptcy on February 18, 2025. The Debtor initially scheduled net income of $7,831.84 and expenses of $4,093, for total disposable income of $3,738.34. After inquiry by the UST, the Debtor documented some expenses, and the UST adjusted the disposable income to $3,380.01 in her motion to dismiss this case. In the unverified Response, the Debtor listed net income of $7,229.40 and expenses of $5,561.94, for disposable income of $1,667.46.

For the purpose of this hearing, the parties have been able to reach a stipulation on the Debtor's figures. The parties agree that the Debtor's actual Schedule I net income is $7,831.84. The parties agree that if only stabilized monthly cash flow is used (counting only two pay periods per month and allowing the Debtor to retain the income from the two other pay periods), the net income is 7,229.40. The parties also agreed that monthly household expenses are $5,805.11.

1

Based on those figures, the Debtor has the following disposable income (using the Debtor's estimated costs):

| Schedule Net Income | $7,831.84 | | Stabilized Net income | 7,229.40 |
|---|---|---|---|---|
| HH Expenses | 5,805.11 | | HH expenses | 5,805.11 |
| **Total Disposable Income** | **2,016.73** | | | **$1,424.29** |

The UST believes that actual net income is the correct standard to use in calculating disposable income under Section 707(b)(3)(B). However, the UST takes the position that an abuse arises under either calculation.

## Statute

A motion to dismiss for abuse is governed by Section 707(b)(1) of the Bankruptcy Code, which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make charitable contributions (that meet the definition of 'charitable contribution' under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b)(1).    The Debtor checked on the petition that the debts are primarily consumer debts and did not contest the designation in the response.  Therefore, the outstanding issue is whether the case constitutes an "abuse."

Dismissal may be based on the presumption of abuse under § 707(b)(2), which is not relevant here, or under § 707(b)(3), which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph [§707(b)(2)] does not arise or is rebutted, the court shall consider –
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances … of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).  Under Section 707(b)(3), the burden is on the moving party.  *In re Perrotta*, 378 B.R. 434, 437 (Bankr. D.N.H. 2007); *In re Ansar*, 383 B.R. 344, 348 (Bankr. D. Minn. 2008).

## Statutory History

Debtor alleges in the Response (Doc. 21) that the United States Trustee "[m]isapplies the Totality of the Circumstances Standard under § 707(b)(3)" by focusing on the Debtor's ability to pay. However, the Response over focuses on the standards under Section 707(b)(3)(A) (bad faith) and ignores the history of Section 707(b), the prevailing case law in North Dakota, and the majority of other bankruptcy courts, including the Eighth Circuit bankruptcy courts that focus on ability to pay as the primary factor.

Prior to adopting the present version of Section 707(b) in 2005, a dismissal of a case under Section 707(b) was solely for "substantial abuse."  The circuit courts adopted a variety of

3

"totality of circumstances" tests to address both the bad faith and ability to pay elements (*see* below).

The legislative history for an early version of Section 707(b)(3) sets forth Congressional intention regarding "totality of circumstances":

> The new section 707(b) also provides that in addition to the means test, Chapter 7 debtors' cases may be dismissed if the filing is not in good faith or the "totality of the circumstances" indicate that granting relief under Chapter 7 would constitute abuse. No inference should be drawn, however that by referencing the "totality of the circumstances" Congress intended to approve the result in *In re Green*, 934 F.2d 568 (4th Cir. 1991) or similar cases. Such cases are rejected by the means test reforms and the change in the standard from "substantial abuse" to "abuse" in HR 2415. However, situations in which courts dismiss debtors from Chapter 7 today clearly continue to be grounds for dismissal under HR 2415, including such cases as *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998). In addition, since the standard for dismissal is revised to require "abuse" rather than "substantial abuse", the courts are clearly given additional discretion to control abusive use of chapter 7 when that is appropriate.
>
> Congress thus intends that the new section 707(b) provide a tightly-focused mechanism for identifying bankrupts who have repayment capacity and sorting them out of Chapter 7, as well as dealing with other forms of abuse. As the same time, the new section 707(b) means test contains procedural safe-guards which ensure that any special financial circumstances of a debtor will be appropriately considered before he or she is dismissed from bankruptcy or converted to another chapter.

CONG. REC. S11700 (December 7, 2000). Thus, Congress sought to broaden the basis to dismiss a case for abuse, from the pre-existing law's "substantial abuse" requirement and not narrow the standard, as the Debtor asks the Court to do in this case.

Congress favorably cited *Lamanna,* which essentially, adopted the "totality of circumstances" test set forth in *In re Krohn*, 886 F.2d123, (6th Cir. 1989). *See Lamanna*, 153

4

F.3d at 4.  The *Krohn* court found that abuse was "predicative upon either lack of honesty [bad faith] or want of need [ability to pay]."  *Krohn*, 886 F.2d at 126-27.[1]  *Krohn* stated that the factors to consider for totality of the circumstances were the following:

> It is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty.  Counted among them, however, would surely be the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events.
>
> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.  That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.  Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities....

---

[1]    Under the "substantial abuse" standard, the Eighth Circuit ruled that the primary consideration is whether the debtor has the ability to fund a 13 plan.  *In re Walton*, 866 F.2d 981, 984 (8th Cir. 1989) (following *In re Kelly*, 841 F.2d 908, 914-15 (9th Cir. 1988); *United States Trustee v. Harris*, 960 F.2d 74, 76 (8th Cir. 1992); *Fonder v. United States*, 974 F.2d 996, 999 (8th Cir. 1992); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 831 (8th Cir. 1994) (comparing § 707(b) to § 707(a)).

The Sixth Circuit's approach was often referred to as the hy-brid approach because it adopted both the Eighth Circuit's ability to pay test and the Fourth Circuit's bad faith approach. Although in practice, the Eight Circuit recognized bad faith as a separate basis to dismiss a case under Section 707(b).  The *Walton* court expressly stated that 'the court may take the petition's good faith and unique hardships into consideration under section 707(b).' *Walton*, 866 F.2d at 983.

5

*In re Krohn*, 886 F.2d at 126-27 (citations omitted) (cited by *In re Lamanna*, 152 F.3d at 4).

Thus, in adopting the Sixth Circuit's approach, *Lamanna* stated: "the "totality of the circumstances" test demands a comprehensive review of the debtor's current and potential financial situation." *Lamanna*, 153 F.3d at 4. "In sum, in assessing the totality of a debtor's circumstances, courts should regard the debtor's ability to repay out of future disposable income as the primary, but not necessarily conclusive factor of "substantial abuse." The factors recited in *Kroh*n should be regarded as a nonexclusive list of relevant considerations." *Lamanna*, 153 F.3d at 4-5.

While adopting the *Krohn/Lamanna* approach to "totality of circumstances", Congress distanced the new law from the approach of *In re Green*, 934 F. 2d 568 (4th Cir. 1991). In reading *Green* and its elements test for "totality of circumstances", the only significant distinction between *Green* and *Krohn/Lamanna* is that *Green* rejected that ability to pay standing alone was cause to dismiss a case, but more or less followed the rest of the *Krohn/Lamanna* factors. *Green*, 934 F.2d at 572 (considering the following factors for totality of circumstances: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) whether the petition was filed in good faith).

6

Therefore, it seems likely that in favoring a totality of circumstance test that favored "ability to pay", but rejecting one that did not consider ability to pay (or at least standing alone), Congress intended § 707(b)(3)(B) to cover instances where a debtor has an ability to pay, but where a debtor does not have the presumption (and burden) of abuse under § 707(b)(2), and also, Congress wanted § 707(b) to be more broad in its application than pre-existing § 707(b) "substantial abuse."

Put into the context of statutory constructions, Congress bifurcated the prevailing court authorities by creating Section 707(b)(3)(A) to consider the good faith of a debtor and Section 707(b)(3)(B) to primarily consider the ability of a debtor to repay debts.

The governing case in the District of North Dakota is *In re Hoffner*, 2007 WL 4868310 (Bankr. D.N.D. Nov. 21, 2007).  The Court noted:  "Courts and commenters alike have overwhelmingly recognized that the section 707(b)(3) "totality of the circumstances" analysis requires a bankruptcy court to undertake an analysis of the debtor's actual debt-paying ability independent of the means test analysis under section 707(b)(2). [extensive list of citations omitted]….The plain language of section 707(b)(3) is clear.  Specifically, the phrase 'totality of the circumstances . . . .of the debtor's financial situation' necessarily includes the extent of the debtor's disposable income and ability to repay his or her creditors." *In re Hoffner*, *3-*4.

Circuit courts agree that ability to pay is a primary consideration when analyzing a motion to dismiss premised on 11 U.S.C. § 707(b)(3)(B). *See Morse v. Rudler (In re Rudler)*, 576 F.3d 37, 51 (1st Cir. 2009) ("If a review of all of a debtor's bankruptcy documents shows that the means test is too generous, a finding of abuse may be appropriate under that subsection [§ 707(b)(3)(B)]."); *Ross-Tousey v. U.S. Trustee (In re Ross-Tousey)*, 549 F.3d 1148, 1161-62

7

(7th Cir. 2008) ("The UST can still request dismissal, as he has done in this case, under section 707(b)(3), either for bad faith or based on the totality of circumstances (which can take into consideration a debtor's actual income and expenses)."); *see also Frederickson v. Coop (In re Frederickson)*, 545 F.3d 652, 653 (8th Cir. 2008) (stating that

> [A] debtor's "disposable income" calculation on Form 22C is a starting point for determining the debtor's "projected disposable income," but . . . the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J.).

Bankruptcy courts within the Eighth Circuit also agree that ability to pay is a primary consideration under the totality of circumstances of financial situation analysis. *See In re Ellison*, 663 B.R. 743 (Bankr. E.D. Mo. 2024) ("In assessing whether a case should be dismissed as abusive based upon the totality of a debtor's financial circumstances, courts focus primarily, "if not exclusively," upon the debtor's ability to repay unsecured creditors. *Booker*, 339 B.R. [662, 667]."), *In re Honkomp*, 416 B.R. 647, 649 (Bankr. N.D. Iowa) ("When considering the § 707(b)(3)(B) totality of the circumstances, 'the Court should consider primarily, if not exclusively, the Debtors' ability to pay.'" (quoting *In re Booker*, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009))); *In re Williams*, 2011 WL 10468090 *3 (Bankr. S.D. Iowa, July 14, 2011)(holding that ability to pay standing alone is cause to find abuse under the totality of circumstances); *In re Cooper*, 2010 WL 2926206, *2 (Bankr. D.S.D. July 22, 2010)(finding that the ability to fund a chapter 13 plan is the primary factor to consider under Section 707(b)(3)); *In re Beard*, 605 B.R. 868, 874 (Bankr. E.D. Ark. 2019)("In the Eighth Circuit, as debtor's 'ability to pay, standing alone, constitutes abuse under the totality of circumstances." (citation and quotation omitted)).

And a majority of bankruptcy courts nationwide agree that ability to pay is a primary consideration under the "totality of circumstances" analysis. *See In re Booker*, 399 B.R. 662, 666 (Bankr. W.D. Mo. 2009) (collecting cases and agreeing with majority that "believes . . . consideration of the debtors' ability to pay is appropriate for several reasons"). In addition, numerous courts have concluded that an ability to pay, standing alone, supports a finding of abuse under the totality of the circumstances analysis. *See, e.g., In re Henebury*, 361 B.R. 595, 604 (Bankr. S.D. Fla. 2007) ("For the reasons stated, the Court concludes that under BAPCPA the ability to pay, standing alone, is sufficient to warrant dismissal of a Chapter 7 case for abuse pursuant to 11 U.S.C. § 707(b)(3)(B)."); *But see In re Nockerts*, 357 B.R. 497, 505-06 (Bankr. E.D. Wis. 2006) (holding that "something other than an ability to pay is required to success on a Motion to Dismiss" under § 707(b)(3)(B)).

Likewise, Courts consider changes in financial circumstances since the bankruptcy filing or current monthly income period in evaluating a debtor's ability to pay. See *In re Pak*, 343 B. R. 239 (Bankr. N.D. Ca. 2006) (finding that the post-petition income of a debtor who was unemployed during the current monthly income period is subject to an ability to pay analysis under Section 707(b)(3)(B));  *In re Henebury*, 361 B.R. 595 (Bankr. S.D. Fla. 2007)(finding that consideration of income of unemployed debtor who started new shortly after filing was appropriate to determine whether dismissal was appropriate under Section 707(b)(2)(B)); *In re Cardona-Pereira*, 2010 WL 500404 (D.N.J. Feb. 4, 2010)(finding that it was appropriate to consider postpetition income of debtor who was unemployed on the date of filing under Section 707(b)(3)(B));  *In re Huey*, 2008 WL 2388022 (Bankr. N.D. Ohio 2008 (finding that it was appropriate to take into consideration an increase in income post-petition); *In re Mondragon*,

2007 WL 2461616 * 4 (Bankr. D. NM August 24, 2007)(finding that changes in post petition income and expenses is relevant under Section 707(b)(3)(B)); In re Goble, 401 B.R. 261, 276-77 (Bankr. S.D. Ohio 2009) (consideration of post petition financial situation is appropriate); *But see In re Elliott,* 2018 WL 8732726 (Bankr. M.D.N.C. Dec. 18, 2018 (finding no abuse under Section 707(b)(3)(B) where the debtor suffered a multitude of hardships, despite post petition increase in income from new employment);

Accordingly, the Court should consider, at a minimum, the debtor's ability to pay as a primary factor under the totality of the circumstances analysis.

**Ability to Repay Debts**

In the Response, the Debtor asserts that the ability to repay 48.3% of the debts is not sufficient to find abuse.   The UST disagrees that 48.5% is not sufficient.    *In re Hoffner* found abuse over the ability to repay 48.6% of debts in a hypothetical chapter 13 plan. *In re Hoffner,* * 5.   The parties can probably scan case law relentlessly and find that percentages fall across a broad spectrum per individual cases.    The best practice is to leave it to the discretion of the Court.

In a case published more recently, a bankruptcy court in the Eight Circuit performed a good analysis of why the issue is best left to the discretion of the Court:

> A debtor's ability to repay 21% of general unsecured creditors' claims in a hypothetical Chapter 13 case may support dismissal for abuse under the case law, although it appears to be at the lower end of the range. *See, e.g.*, *Praleikas*, 248 B.R. at 145 (20%); *In re Alther*, 537 B.R. 262, 270 (Bankr. W.D. Va. 2015) (20%); *In re Kubatka*, 605 B.R. 339, 371 (Bankr. W.D. Pa. 2019) (27%); *In re Navin*, 548 B.R. 343, 351 (Bankr. N.D. Ga. 2016) (12% or more). But that is not the only relevant factor. The sheer amount of money that a debtor could pay to creditors in Chapter 13 must be a consideration as well. A simple thought experiment shows why. If

10

> the Debtor had only $30,000.00 in unsecured debt, her hypothetical distribution to general unsecured creditors would be more than 50%. On the other hand, if the Debtor had $500,000.00 in unsecured debt—perhaps because she injured someone in an automobile crash—the distribution would be only 3.2%. But the Debtor's Chapter 7 filing would not be inherently more abusive in the former scenario than in the latter; the only difference between the two is the amount of debt. *See Praleikas*, 248 B.R. at 145 (noting that if debtors are permitted to remain in Chapter 7 merely because their hypothetical percentage distribution would be low, "debtors would be rewarded for having more debt, rather than less").
>
> Section 707(b)(2), though not directly at issue here, is instructive. The presumption of abuse may arise if a debtor's net income over the life of a 60-month plan is at least 25% of the amount of general unsecured claims, but it also arises if the figure exceeds $15,150.00, regardless of the quantum of claims. *See* 11 U.S.C. § 707(b)(2)(A)(i). Income and expenses are calculated differently under Section 707(b)(2) than they are under Section 707(b)(3), and so I do not believe that a debtor's ability to pay $15,150.00 is dispositive under the totality-of-the-circumstances test of Section 707(b)(3)(B). Nevertheless, the structure of the statute demonstrates that Congress believes that at some point, a debtor's retention of money that could benefit unsecured creditors is abusive, without regard to how much money the debtor owes to those creditors.

*In re Ellison*, 663 B.R. at 749-750.   The court in *Ellison* is accurate that court's tend to get uncomfortable in the 20-ish% range; however, the Court's should be mindful not to reward high debt debtors with a set percentage and be mindful – but not bound – by the dollar and 25% percent threshold of where Congress defined "abuse" under Section 707(b)(2).

11

**Argument**

In the present case, the UST calculates the following ability to repay creditors:

|  | Schedule I | Stabilized |
|---|---|---|
| **Total Disposable Income** | **2,016.73** | **$1,424.29** |
| X 60 mos | 121,003 | 85,457.40 |
| Less 10% Trustee Comp | 12,100.38 | 8,545.74 |
| Less Atty Fees | 4000 | 4000 |
| Less Priority | 12,658 | 12,658 |
| Available to Unsecured | $92,244.62 | $60,253.66 |
| **% of $160,810.72** | **57%** | **37.4%** |

In this case, the Debtor is requesting that the pre-petition unemployment be a blanket pass from Section 707(b)(3)(B) ability to pay consideration.  The UST does not dispute that the Debtor filed the case in good faith.  However, the circumstances of the Debtor's unemployment is not cause to overcome the Debtor's ability to pay his debts.

The Debtor currently earns $130,000 per year.   The Debtor has an ability to pay between 37% and 57% of his debts.  The ability to pay  $60,253 to $92,244.62 is not an insignificant dollar amount to commit to a hypothetical chapter 13 plan.

The UST believes that the 57% number is the correct number.  The "stabilized income" argument appears to be a novel argument that allows the debtor to retain $7,029.40 of his disposable income each year.   The correct figure to use is his actual monthly average income. *See In re Brown,* 301 B.R. 607 n. 1 (Bankr. M.D. Fla. 2003) (noting that the Court determined the income calculation by multiplying the biweekly salary x 26 and divided by 12);  In re Traux, 446 B.R. 638, 643 n. 2 & n. 3 (Bankr. S.D. Ga. 2010)(using similar analysis).

Aside from unemployment, the Debtor has not raised any other non-speculative issues.  The Debtor has raised concerns about the bankruptcy case being on his record and its impact on

his ability to set up bank accounts at his employer. However, by already filing for bankruptcy, he is already subject to having the case reported by credit agencies for the next 10 years. See 15 U.S.C. § 1681c(1)(bankruptcy cases may be reports no more than 10 years). While Mr. Ellingson is concerned about the impact of bankruptcy on his ability to be an authorized signatory, that is a concern that will continue for the next 10 years regardless of the outcome of this hearing.

As to the stability of the Debtor's employment, that is speculation at this point. "[A] court may not engage in speculation when determining net income and reasonable and necessary living expenses." *In re Walker*, 650 F.3d 1227, 1233 (8th Cir. 2011)(commenting in a case under Section 523(a)(8) and *quoting* *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 780 (8th Cir. 2009));  In re Stackhouse, 582 B.R. 445, 452 (Bankr. S.D. Ohio 2018)(rejecting debtor's concern on longevity of employment due to lack of evidence that debtor intends to retire, his income is unstable or that he will rely on disability and citing *In re Reese*, 402 B.R. 43, 55 (Bankr. M.D. Fla. 2008) (for purposes of determining abuse under § 707(b)(3)(B), "[f]acts that are 'unknown or highly speculative' are not relevant to the analysis.") (citing *In re Parada*, 391 B.R. 492, 502 (Bankr. S.D. Fla. 2008) ).   At this time, the Debtor receives a steady pay check every two weeks. From the Statement of Financial Affairs, it appears that the Debtor was similarly employed at a similar salary of $137,737 in 2023. Therefore, it appears that he has a historical ability to earn a substantial salary.

While unemployment is unfortunate, the Court should not loose sight of the fact that the creditors were the parties who supported his period of unemployment. There is no reason under Section 707(b)(3)(B) why the Court should not at least consider the whether the Debtor should

13

use his disposable income to pay those creditors. There may be circumstances where unemployment coupled with other factors may give rise to a finding that dismissal under Section 707(b)(3)(B) is not appropriate, but standing alone in this case, it is not reasonable. The Court would effectively end any Section 707(b)(3)(B) analysis because most debtors file bankruptcy due to unfortunate circumstances, whether it be unemployment, medical issues, divorce, unexpected expenses due to unforeseen circumstances, etc. In other words, the Court would be imposing a Section 707(b)(3)(A) finding of bad faith standard into every case, thus rendering Section 707(b)(3)(B) redundant and also overturning the prevailing standard that North Dakota has adhered to since Section 707(b)(3)(B) was passed into law.

The ability to pay debts with current income is cause to dismiss this case under the totality of circumstances at § 707(b)(3). Therefore, the UST requests that the Court enter its Order dismissing the above-captioned chapter 7 case and granting such other and further relief as it deems just and equitable.

Dated: September 5, 2025

MARY R. JENSEN
ACTING UNITED STATES TRUSTEE REGION 12

 /s/ Sarah J. Wencil
Sarah J. Wencil
Trial Attorney
U.S. Courthouse Suite 1015
300 South Fourth Street
Minneapolis, MN 55415
Sarah.J.Wencil@usdoj.gov